RAMEY, Appellant,

v.

MUDD, et al., Appellees.

[Cite as *Ramey v. Mudd,* 154 Ohio App.3d 582, 2003-Ohio-5170.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 02CA14.

Decided Sept. 26, 2003.

584

Steven L. Story, for appellant.

Michael M. Heimlich, for appellees.

Richard Mudd, pro se.[1]

EVANS, Presiding Judge.

{¶ 1} Plaintiff–appellant Nicole Ramey appeals from the judgment of the Gallia County Court of Common Pleas, which granted summary judgment in favor of

---

1. Defendant Richard Mudd was a party to the lower court proceedings. However, he has made no appearance through brief, or otherwise, in this court.

Gallia County, its sheriff, defendant–appellee David Martin, and the Gallia County Board of Commissioners, defendants–appellees Shirley Angel, Skip Meadows, and Bill Davis.

{¶ 2} Appellant asserts that the trial court erred by not finding appellees liable pursuant to the doctrine of respondeat superior for the acts committed by former sheriff's deputy, defendant Richard Mudd.

{¶ 3} For the reasons that follow, we disagree and affirm the judgment of the trial court.

### The Lower Court Proceedings

{¶ 4} In January 1996, defendant Richard Mudd had illegal sexual contact with plaintiff–appellant Nicole Ramey, who was a minor at the time. Mudd was a friend of appellant's family, and his daughter and appellant were close friends. Evidently, on the day of the incident, Mudd picked up his daughter and her friends, including appellant, from a movie to take them home. At the time, Mudd was employed by the Gallia County Sheriff's Department as a sheriff's deputy and the county Drug Abuse Resistance Education ("D.A.R.E.") officer. Mudd was transporting the girls in the marked D.A.R.E. van while wearing his deputy uniform. After taking most of the girls home, Mudd was left in the van alone with appellant. He took appellant to a secluded spot and made sexual advances towards her, as well as inappropriately touching her. Consequently, Mudd pled guilty to a charge of gross sexual imposition and was sentenced accordingly.

{¶ 5} Subsequently, appellant initiated an action against Mudd, Gallia County, its sheriff, defendant–appellee David Martin, and the Gallia County Board of Commissioners, defendants–appellees Shirley Angel, Skip Meadows, and Bill Davis. Appellant asserted several causes of action, including battery and intentional infliction of emotional distress and deprivation of her civil rights under Section 1983, Title 42, U.S.Code. Appellant also alleged that the county and appellees were liable for her damages pursuant to the doctrine of respondeat superior and their alleged negligence in the hiring, training, and supervising of Mudd.

{¶ 6} Mudd and appellees answered appellant's complaint, generally denying all the allegations. Subsequently, appellees filed a motion for summary judgment asserting that they were not liable for the criminal acts committed by Mudd against appellant. Appellees argued that they were not vicariously liable for Mudd's actions as those actions pertained to appellant's federal claims because Mudd was not acting under the color of law or pursuant to some county policy when he assaulted appellant. Appellees also argued that they were afforded statutory immunity under R.C. Chapter 2744 as it pertained to appellant's state claims and that the theory of respondeat superior was inapplicable because Mudd

was acting outside the scope of his employment at the time of the incident. Sometime thereafter, the trial court granted appellees' motion for summary judgment, finding that appellees were not vicariously liable for the acts committed by Mudd against appellant.

{¶ 7} The action against Mudd proceeded to trial. On the day of trial, appellant appeared before the court, but Mudd failed to appear. The trial court granted judgment in appellant's favor, finding Mudd liable for compensatory and punitive damages totaling $40,000.

## The Appeal

{¶ 8} Appellant timely filed her notice of appeal and presents the following assignment of error for our review: "The trial court erred to the substantial prejudice of the Plaintiff by granting summary judgment to the Defendants Gallia County, Gallia County Board of Commissioners, and the Gallia County Sheriff, in failing to find that they were responsible for the actions of the Defendant's [sic] employee under the doctrine of *respondeat superior.*"

## I. Standard of Review

{¶ 9} We conduct a de novo review of a trial court's decision to grant summary judgment pursuant to Civ.R. 56. See *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. The Supreme Court of Ohio has established the test to be employed when making a determination regarding a motion for summary judgment:

{¶ 10} "Under Civ.R. 56, summary judgment is proper when '(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" (Citations omitted.) *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129. Therefore, upon review, we give no deference to the judgment of the trial court. See *Renner,* supra.

{¶ 11} Additionally, when a party to an action moves for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists as to all essential elements of a claim, even those issues the opposing party would bear the burden of proving at trial. See *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. However, a nonmoving party may not rest upon the allegations set forth in its pleadings in response to a properly supported summary judgment motion. See *State ex rel. Mayes v. Holman* (1996), 76 Ohio St.3d 147, 666 N.E.2d 1132. The nonmoving party must show that a genuine

issue of material fact remains to be tried by pointing to specific facts in the record, either through affidavits or by other proper means. See id.

## II. Statutory Immunity and Appellant's State–Law Claims

{¶ 12} While not specifically addressed in the trial court's judgment entry or by appellant in her brief before this court, we address the issue of statutory immunity pursuant to R.C. Chapter 2744 because the immunity issue is dispositive of appellant's state-law claims. We note that appellees raised the issue of statutory immunity before the trial court.

{¶ 13} Resolution of immunity questions under R.C. Chapter 2744 involves the application of a three-tiered analysis. See *Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, at ¶ 19; *Marshall v. Montgomery Cty. Children Serv. Bd.* (2001), 92 Ohio St.3d 348, 352, 750 N.E.2d 549; *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610; see, also, *Ratcliff v. Darby*, Scioto App. No. 02CA2832, 2002-Ohio-6626, 2002 WL 31721942. First, we must determine whether immunity would apply in this case. R.C. 2744.02(A)(1) provides that a political subdivision is not liable in damages in a civil action for injury caused by the acts of one of its employees except as provided in subsection (B) of the statute. Mudd was a county employee, and this is a case to recover damages allegedly caused as a result of Mudd's actions. Therefore, the statute applies, and appellees are potentially immune from liability. However, our analysis does not end here.

{¶ 14} The immunity granted by R.C. 2744.02(A)(1) is on its face subject to five exceptions delineated in R.C. 2744.02(B). See *Ryll, Marshall, Cater*, and *Ratcliff*, supra. Accordingly, once immunity is established, the second tier of our analysis involves determining whether any of these five exceptions apply. See id. Our review of subsection (B) reveals that the only exception that might potentially apply provides as follows:

{¶ 15} "(5) [A] political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

{¶ 16} For this exception to apply, appellant must be able to present a statute in which the Ohio legislature expressly imposed liability on political subdivisions for actions similar to those perpetrated by Mudd. See *Ratcliff*, supra; *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539. Appellant has not brought to our attention any such enactment by the Ohio General Assembly, nor has our

research revealed any. See id. Furthermore, this Court has previously rejected the proposition that pursuant to the Supreme Court of Ohio's decision in *Campbell*, political subdivisions can be held liable for an employee's violation of *any* criminal statute. See *Ratcliff* at ¶ 19.

{¶ 17} In *Ratcliff*, a bailiff employed by the county allegedly threatened plaintiff with a handgun. The plaintiff sued the bailiff for assault, battery, and intentional infliction of emotional distress and asserted that as county employees, the county commissioners and sheriff were liable pursuant to respondeat superior, negligent/reckless supervision of an employee, and civil rights violations under Section 1983, Title 42, U.S.Code. This court affirmed the trial court's grant of summary judgment in favor of the county and its officials, finding that R.C. Chapter 2744 afforded them immunity for the bailiff's actions as they pertained to the state-law claims. *Ratcliff* is practically indistinguishable from the case sub judice. Similarly, we find that appellees are immune from all liability for appellant's state-law claims. Consequently, we do not need to engage in the third tier of the immunity analysis. See *Ratcliff* at ¶ 21.

{¶ 18} As an aside, we note that even under the traditional legal doctrine of respondeat superior, neither the county nor the sheriff's department could be held liable for Mudd's actions. "For an employer to be liable for the tortious act of an employee under the doctrine of respondeat superior, the act must be committed within the scope of employment and, if an intentional tort, it must be calculated to facilitate or promote the employer's business or interest." *Browning v. Ohio State Hwy. Patrol*, 151 Ohio App.3d 798, 2003-Ohio-1108, 786 N.E.2d 94, at ¶ 60. Furthermore, "if the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are committed while the employee is on duty." Id., citing *Caruso v. State* (2000), 136 Ohio App.3d 616, 621, 737 N.E.2d 563.

{¶ 19} Accordingly, summary judgment as to appellant's state-law claims was properly granted in appellees' favor.

### III. Federal Claims

{¶ 20} Section 1983, Title 42, U.S.Code provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects * * * any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, in order to maintain a claim under Section 1983, a plaintiff must prove that (1) a person acted under the color of state law and committed the conduct in controversy; and (2) the conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or the laws of the United States. See *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456; *Mankins v. Paxton* (2001), 142 Ohio App.3d 1, 10, 753 N.E.2d 918.

{¶ 21} Municipalities and other local governments are included among those "persons" to whom Section 1983 applies. See *Ratcliff,* supra, citing *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. However, a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. See id. at ¶ 28, citing *Monell* at 694, 98 S.Ct. 2018, 56 L.Ed.2d 611. Rather, when the execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, the government may be responsible under Section 1983. Id.; see, also, *Nungester v. Cincinnati* (1995), 100 Ohio App.3d 561, 654 N.E.2d 423.

{¶ 22} "A municipal employer [or the] supervisor of a person who deprived a person of [his] federal constitutional rights is not vicariously liable for the employee's actions unless the employer implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of its employee." *Ratcliff* at ¶ 29, citing *Brkic v. Cleveland* (1997), 124 Ohio App.3d 271, 279, 706 N.E.2d 10; *Guess v. Wilkinson* (1997), 123 Ohio App.3d 430, 435, 704 N.E.2d 328; *Villante v. New York Dept. of Corrections* (C.A.2 1986), 786 F.2d 516, 519; *Krulik v. New York Bd. of Edn.* (C.A.2, 1986), 781 F.2d 15, 23. In other words, a local government cannot be held liable under Section 1983 pursuant to the theory of respondeat superior. See id.; see, also, *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 426, 666 N.E.2d 304, citing *Polk Cty. v. Dodson* (1981), 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509; *Wells v. Akron* (1987), 42 Ohio App.3d 148, 537 N.E.2d 229; *Foster v. Walsh* (C.A.6 1988), 864 F.2d 416; *O'Banion v. Bowman* (S.D.Ohio 1993), 824 F.Supp. 743. However, liability under Section 1983 will attach to employers who are deliberately indifferent to the offending acts perpetrated by their employees. See *Ratcliff* at ¶ 29, citing *Riley v. Olk–Long* (C.A.8, 2002), 282 F.3d 592, 596; *Andrews v. Fowler* (C.A.8, 1996), 98 F.3d 1069, 1078.

{¶ 23} In the case sub judice, appellees presented the trial court with appellant's own deposition testimony to establish (1) that Mudd was not acting under the color of law when he made sexual advances towards her; and (2) that appellees were not aware of Mudd's behavior, did not condone the behavior, and the behavior was not in furtherance of some county policy or custom. Specifically, appellant testified that Mudd did not threaten her in any way during the incident, did not exercise any authority, or claim that he had any authority to do what he did. She also testified that she had no reason to believe that the county

should have known that Mudd would do what he did to her. She further testified that at the time of the incident, Mudd was off duty and was acting as a father, taking his daughter and her friends home from the movies. In response to appellees' motion for summary judgment, appellant presented no evidence that disputed appellees' assertions that Mudd was not acting under the color of law or in furtherance of a county policy, or that the county and its officers acquiesced or encouraged Mudd's actions. All appellant relies on in support of her position is that the incident took place in a county-owned vehicle and Mudd was wearing his deputy uniform.

{¶ 24} Therefore, no genuine issue of material fact exists regarding appellant's federal claims.

## Conclusion

{¶ 25} Since appellees are immune from all liability for appellant's state law claims and the theory of respondeat superior does not render appellees liable for appellant's federal claims, the trial court did not err in granting appellees summary judgment. Accordingly, we overrule appellant's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

HARSHA and PETER B. ABELE, JJ., concur in judgment only.