[Cite as *Griffits v. Lally*, 2015-Ohio-4686.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102763**

**DANIEL GRIFFITS, ET AL.**

PLAINTIFFS-APPELLEES

vs.

**OFFICER LALLY**

DEFENDANT-APPELLANT

**JUDGMENT:**

AFFIRMED IN PART, REVERSED IN PART,
AND DISMISSED IN PART

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-769252

**BEFORE:** Jones, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** November 12, 2015

**ATTORNEY FOR APPELLANT**

Nick Tomino
O'Toole, McLaughlin, Dooley & Pecora Co., L.P.A.
5455 Detroit Road
Sheffield Village, Ohio 40546


**ATTORNEYS FOR APPELLEES**

Anthony N. Palombo
William Craig Bashein
Bashein & Bashein Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

Paul W. Flowers
Paul W. Flowers Co. L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Officer John Lally appeals from the trial court's February 19, 2015 judgment denying his motion for summary judgment. Under Lally's first assignment of error, we affirm the portion of the trial court's judgment as it relates to Officer Lally's immunity regarding plaintiff-appellee Jesse Griffits ("Griffits"), but reverse the portion of the judgment as it relates to plaintiff Daniel Griffits.[1] We disregard Lally's second assignment of error for lack of a final appealable order and dismiss this portion of the appeal. The trial court's judgment is therefore affirmed in part and reversed in part, and the case is remanded.

I.  Procedural History and Facts

{¶2} This action was first filed by plaintiffs Daniel Griffits, Jesse Griffits, Charles Scott, and Jamie Bragg in December 2007 (Case No. CV-07-645212). In addition to Officer Lally, the Village of Newburgh Heights, the Village of Newburgh Heights Police Department, and several Jane and John Does were named as defendants.

{¶3} On December 31, 2007, the summons and complaint were sent by certified mail to Lally at the Village of Newburgh Heights Police Department. A January 3, 2008 docket entry indicates the return of the certified mail receipt for the summons and complaint mailed to Lally, and that the receipt was "signed by other" on January 2, 2008. On January 30, 2008, the village, the police department, and Lally filed a combined answer. On that same date, the village filed a motion for judgment on the pleadings, and it also filed a second motion for judgment on the pleadings on February 25, 2008. The trial court denied both of the village's motions.

{¶4} The village and police department appealed, and this court reversed and remanded, finding that they were entitled to immunity. *Griffits v. Newburgh Hts.*, 8th Dist. Cuyahoga No.

_____

[1]Plaintiff Daniel Griffits has not filed a brief in opposition in this appeal.

91428, 2009-Ohio-493. On remand to the trial court, the plaintiffs re-issued service of the summons and complaint on Lally to two different Cleveland addresses; the January 25, 2010 docket entry reflects that the certified mail receipt was "signed by other" on January 20, 2010 at one of the addresses. Service at the other address failed. *See* February 16, 2010 docket entry.

{¶5} Meanwhile, the village had filed a motion to dismiss, which the trial court granted relative to the Jane and John Doe defendants, but denied as to Lally. As to Lally, the court found that the "matter as to valid service on defendant Lally has been cured by the perfection of service on [01/20/2010]." Officer Lally appealed, but this court dismissed the appeal for lack of a final, appealable order. *Griffits v. Newburgh Hts.*, 8th Dist. Cuyahoga No. 94741, motion No. 432177. In September 2010, Lally filed a motion for summary judgment. In November 2010, the plaintiffs voluntarily dismissed the action.

{¶6} The plaintiffs refiled the action in November 2011, under the case presently before the court. The complaint sets forth claims for relief based on assault and battery, infliction of emotional distress, and false arrest. Lally was served in August 2012, and in October 2013, he filed a motion for summary judgment. The summary judgment motion sought judgment as a matter of law in favor of Lally based on (1) the merits of the claims, (2) the statute of limitations, and (3) immunity. The motion was only opposed by Jesse Griffits. Plaintiffs Charles Scott and Jamie Bragg voluntarily dismissed their claims. The trial court denied Lally's motion in its "entirety."

{¶7} The incident giving rise to this case occurred on December 21, 2006, and resulted in the arrest of plaintiff-appellee Jesse Griffits. It is Griffits's contention that he was subjected to police brutality during the course of his encounter with Officer Lally, who was then employed with the Village of Newburgh Heights Police Department. Further facts will be developed in the

analysis section.

## II.   Law and Analysis

{¶8} Officer Lally presents the following two errors for our review:

I.   The trial court committed reversible error when it denied Defendant's motion for summary judgment based upon immunity under Revised Code Chapter 2744.

II.   The trial court committed reversible error when it held that Plaintiffs commenced their action against Defendant Officer Lally even though Plaintiffs did not obtain jurisdiction over Defendant by serving him with the summons and complaint within one year as required by Civil Rule 3(A).

## Service and Statute of Limitations

{¶9} We begin our analysis with the second assignment of error.   In this assignment, Officer Lally contends that he was not served with the summons and complaint in the first case until January 2010, and by that time the statute of limitations had run on all of Griffits's claims. Therefore, according to Lally, the claims were not "saved" for the filing of this case.

{¶10} Generally, the denial of summary judgment is not a final, appealable order.   *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, ¶ 10.   However, a trial court's order denying a summary judgment motion on the basis of statutory immunity constitutes a final order.   *See* R.C. 2744.02(C).   But appellate review under R.C. 2744.02(C) is limited to the denial of immunity.   *Nagel v. Horner*, 162 Ohio App.3d 221, 2005-Ohio-3574, 833 N.E.2d 300, ¶ 21 (4th Dist.).

{¶11} The second assignment of error relates to the trial court's jurisdiction based on service and the statute of limitations; it has nothing to do with statutory immunity.   Therefore, this court does not have jurisdiction at this time over the portion of the trial court's ruling relative to service and the statute of limitations and, we therefore disregard this assignment of error, and this portion of the appeal is dismissed.   *Vlcek v. Chodkowski*, 2015-Ohio-1943, 34 N.E.3d 446, ¶

35, 37 (2d Dist.).

**Statutory Immunity**

{¶12} The crux of this appeal, as set forth in Officer Lally's first assignment of error, is whether the trial court erred in denying Lally's motion for summary judgment on the ground of statutory immunity. We find that it did not.

{¶13} Officer Lally contends that he is immune under R.C. 2744.03(A)(6), which provides that an employee of a political subdivision is immune from liability unless one of the following is applicable:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶14} Griffits, on the other hand, contends that under subsection (b) stated above, immunity is not afforded to Officer Lally. That is, Griffits contends that Lally acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶15} One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm. *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th

Dist.1995). Malice includes "the willful and intentional design to do injury, or the intention or desire to harm another through conduct which is unlawful or unjustified." *Shadoan v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 21486, 2003-Ohio-5775, ¶ 12.

{¶16} Bad faith is defined as a "dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will." *Lindsey v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 24352, 2009-Ohio-2457, ¶ 16. A person acts wantonly if that person acts with a complete "failure to exercise any care whatsoever." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶17} One acts recklessly if one is aware that one's conduct "creates an unreasonable risk of physical harm to another[.]" *Thompson v. McNeill*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705 (1990). Recklessness is more than mere negligence in that the person "must be conscious that his conduct will in all probability result in injury." *Fabrey* at 356.

{¶18} In support of his summary judgment motion, Officer Lally submitted his own affidavit in which he averred that he had probable cause to arrest Griffits. Lally averred that Griffits resisted arrest and he, therefore, had to use "reasonable force" to effectuate the arrest. Lally denied using excessive or unreasonable force on Griffits. Officer Lally further averred that he "did not engage in outrageous conduct * * * or any conduct that was likely to cause severe and debilitating emotional distress" and that he did not "act with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶19} In his opposition to Lally's motion, Griffits submitted his own affidavit, photographs purporting to depict his injuries after the incident, and Lally's deposition testimony. At deposition, Officer Lally testified to the following.

{¶20} A BP gas station can be seen from a window at the Newburgh Heights police

station. At the time in question, Officer Lally was inside the police station and a dispatcher alerted him to activity at the gas station. Upon looking out of the window, Lally saw a "party bus" that had pulled onto the gas station's lot. Several males got out of the bus, went to the side of BP's property, and began urinating. Officer Lally and his partner decided to respond to the location in their patrol car.

{¶21} Upon arriving, Lally rolled down his window and told the males that if they continued urinating in public he was going to take them to jail. Lally testified that the majority of the males said "oh, okay, sorry," but one, whom Lally later identified as Griffits, came up to the patrol car, stuck his head in the window, and profanely asked Lally what he was "going to do about it." According to Lally, Griffits "practically spit all over" his face, almost "head butted" him, and he could "smell the booze coming off of him." Lally testified that Griffits's action "scared" him and he was "taken aback."

{¶22} Lally further testified that after sticking his head into the car, Griffits briskly walked away and headed to a nearby tavern. Two females approached the patrol car and told Lally and his partner that Griffits had been "bothering" them. Lally's partner exited the patrol car to talk to the females and Lally left in the patrol car to talk to Griffits, who was outside the tavern.

{¶23} Officer Lally asked Griffits for his identification. Griffits told Lally he had to go back to his car presumably to retrieve his identification, but Lally would not allow him. The officer told Griffits to place his hands on the patrol car and told him he was going to do a pat-down search for weapons. According to Officer Lally, four or five males surrounded him and asked him what was going on. Lally told them to back up, but they did not listen; Lally radioed for back-up assistance. Lally retrieved his expandable baton, but because of his "high stress level," it slipped from his hands. The chief of police arrived at the scene and got the group

of males to back up.    Other back-up officers also arrived.

{¶24} As the chief and the other back-up officers dealt with the males who had been surrounding Lally, Lally did a pat-down search of Griffits.    As he was doing the pat-down, his partner was walking to the patrol car with Daniel Griffits, Griffits' father, and was telling him that he was under arrest for obstruction.    Lally testified that upon hearing this, Griffits got "really excited" and Lally put his hand on Griffits's back and told him to relax.    Lally testified that the following ensued:

> [Griffits] comes off the [patrol] car with, I think it was his right hand and he flung his elbow and almost took my head off my shoulders.    I ducked.    We get into a wrestling match.    I have him around his waist/chest area.    I'm trying to squeeze him.    Now he's a pretty strong guy because he was pulling me around.    And [another officer] came over to help me while the other officers are dealing with these other males I'm assuming. [The other officer] grabs him, he pushes her up against the wall and * * * we come down, I pull out my pepper spray * * * [and] give a one second burst to * * * his mouth/orbital area.

{¶25} Officer Lally testified that as a result of the "wrestling match" he decided he was going to arrest Griffits for disorderly conduct.    Lally had Griffits on the ground and was able to get his hands handcuffed behind his back.    According to Lally, Griffits was "smacking" and "banging" his own head against the concrete curb both before and after he handcuffed him. Officer Lally denied that he ever struck Griffits, banged his head into the ground, or used his baton on him.

{¶26} Griffits's affidavit offers another version of events, however.    Griffits averred that on the evening in question he, his father and some other family members went to the tavern after they had finished their shifts at a steel company.    Griffits was standing outside the bar and observed the "party bus" pull onto the BP gas station lot.    He then saw a group of people exit the bus and some males from the group urinating next to a dumpster on the property.    Griffits averred that the group was "loud and rowdy, [and] cheering for the Browns."    Griffits denied any

association whatsoever with the group.

{¶27} Griffits averred that he walked from the tavern to the BP gas station to purchase cigarettes and a soft drink. Griffits saw a police car pull onto the BP parking lot as he was leaving the gas station and he heard someone from the police car yell something. Griffits continued walking back to the tavern. According to Griffits, Officer Lally pulled up near him in his patrol car. Griffits averred that Lally was "clearly irate and apparently believed that [he] was one of the party bus people." Officer Lally, according to Griffits, "got out of the police car, grabbed [him] by the arm, and threw [him] up against the police car."

{¶28} Griffits further averred that Officer Lally then pepper sprayed him in the face, which caused him to "buckle" over, and then Lally "violently and repeatedly" struck him in his face. Further, Griffits averred that Lally handcuffed, kicked him, and "threw" him in the back of the police car.

{¶29} Griffits denied that he (1) broke any laws, (2) attempted to flee or harm anyone, or (3) self inflicted any of his injuries. He averred that all of his injuries were caused by Officer Lally, and that he has suffered emotional distress as a result of the incident. Griffits contends that he can demonstrate at trial that his injuries, as purportedly depicted in the photographs, could not have possibly been self-inflicted.

{¶30} Our review of a trial court's decision on a summary judgment motion is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the

evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.

{¶31} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶32} Upon review, we find that this record supports a finding that a genuine issue of material fact exists as to whether Officer Lally acted with malicious purpose, in bad faith, or in a wanton or reckless manner. In so finding, we recognize that the Ohio Supreme Court has stated that the issue of wanton misconduct is normally a jury question. *Fabrey*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31. Because of the factual dispute, summary judgment on the issue of Lally's immunity relative to his interaction with Griffits was precluded.

{¶33} In regard to the trial court's denial of summary judgment on the merits of the claims, for the reasons previously stated in resolving the second assignment of error, this court is without jurisdiction in this appeal to consider that denial. However, in regard to the trial court's judgment as it related to Lally's immunity vis-a-vis plaintiff Daniel Griffits, we find that the trial court erred. According to Lally, he had no interaction whatsoever with Daniel Griffits. Daniel Griffits did not oppose Lally's motion for summary judgment at the trial court level (and has not appeared in this appeal); therefore, there is no evidence in the record opposing Lally's contention. Consequently, summary judgment should have been granted in favor of Lally as it related to

plaintiff Daniel Griffits only.

{¶34} The first assignment of error is overruled in part and sustained in part. The trial court's judgment is affirmed as it pertains to the denial of summary judgment relative to Lally's immunity regarding Jesse Griffits, but is reversed as it pertains to the denial of summary judgment relative to Lally's immunity regarding Daniel Griffits. The portion of the appeal concerning service and the statute of limitations is not a final appealable order and is dismissed.

It is ordered that appellants and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR